```
              UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE
```

Gloria Carter and Roy Farr

    v.                                                           Civil No. 05-cv-399-JD
                                                                              Opinion No. 2006 DNH 093

North Central Life Insurance Company

O R D E R

Gloria Carter and Roy Farr filed a putative consumer class action, alleging that North Central Life Insurance Company breached its insurance contracts with them and other members of the putative class by failing to refund the unearned portion of insurance premiums that had been prepaid as part of their car financing. Carter and Farr also filed a preliminary motion for class certification. North Central moves to dismiss the plaintiffs' claims and to exclude certain individuals from the putative class. Carter and Farr oppose North Central's motions.

I. Motion to Dismiss

North Central contends no breach has occurred, making the plaintiffs' claims unripe and depriving them of standing to proceed. In support of those theories, North Central argues that it was not obligated to refund the unearned portions of the plaintiffs' insurance premiums because the plaintiffs did not provide notice of their prepayments and because the dispute about the refunds has not been resolved. North Central also asserts

that the claims should be dismissed because the plaintiffs breached their obligation of good faith and fair dealing by failing to give North Central notice before filing suit.  As a fallback position, North Central argues that the combined effect of New Hampshire Revised Statutes Annotated ("RSA") §§ 361-A:7, IV-a, 408-A:8, and 402:81 requires notice to the insurer as a condition precedent to the obligation to refund unearned premiums to the insured.[1]  Carter and Farr object to the motion to dismiss.

In considering a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts the facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff.  Edes v. Verizon Comms., 417 F.3d 133, 137 (1st Cir. 2005).  The court must determine whether the complaint, construed in the proper light, "alleges facts sufficient to make out a cognizable claim."  Carroll v. Xerox Corp., 294 F.3d 231, 241 (1st Cir. 2002).  "The standard for granting a motion to dismiss is an exacting one: 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'"

---

[1]North Central introduces the condition precedent argument as follows:  "The Court need review this section of North Central's brief only if it rejects all of North Central's four previous arguments."  Mem. at 17.

McLaughlin v. Boston Harbor Cruise Lines, Inc., 419 F.3d 47, 50 (1st Cir. 2005) (quoting Conley v. Gibson, 355 U.S. 41, 46 (1957)).  Because the court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment," the insurance documents submitted by the parties will also be reviewed for purposes of deciding the motion.  Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000); see also Carrier v. Am. Bankers Life Assurance Co., 2006 WL 1049721, at *1 (D.N.H. Apr. 21, 2006).

    A.   Contractual Preconditions

It is undisputed that North Central's insurance policies at issue in this case do not expressly require an insured to notify North Central when prepayment is made and a refund is due.  North Central argues that two provisions in its policies impose obligations on its insureds that have not been fulfilled by the plaintiffs here, making the plaintiffs' breach of contract claim premature.  One provision pertains to payment of interest on refunds, and the other requires written proof of loss before an insured may bring suit to recover under the policy.  The plaintiffs contend that neither provision affects their breach of contract claim.

"The interpretation of insurance policy language, like any contract language, is ultimately an issue of law for the court to decide." D'Amour v. Amica Mut. Ins. Co., 891 A.2d 534, 536 (N.H. 2005) (internal quotation marks omitted). The court "construe[s] the language of an insurance policy as would a reasonable person in the position of the insured based on a more than casual reading of the policy as a whole." Id. In interpreting policy language, the court is bound by its reasonable meaning and is not free to rewrite policy provisions. Catholic Med. Ctr. v. Exec. Risk Indem., Inc., 151 N.H. 699, 702 (2005).

    1.  Bona fide dispute.

The refund provisions in the applicable policy certificates state: "Any refund not paid within 30 days will earn interest at 10 percent beginning on the 31st day, except in a bona fide dispute, or where the final premium is subject to audit, or other adjustment of premium." The applicable group policies state: "Any refund not paid within 30 days will earn interest at 10% per annum beginning on the 31st day. In the event the amount is in bona fide dispute, or where the final premium is subject to audit or other adjustment, the amount of the refund shall not become due until the dispute is resolved and the audit or other adjustment of premium is completed and the final amount of premium is determined." North Central asserts that this suit and

any suit about a refund constitutes a dispute about the amount of a refund within the meaning of that provision.  Based on that interpretation, North Central contends that the plaintiffs cannot bring suit to recover their refunds until the "bona fide dispute" raised in this action is resolved.

North Central's interpretation of the "bona fide dispute" provision does not comport with the standard of what a reasonable person would conclude the provision means after more than a casual reading.  That provision expressly applies to a dispute about the amount that is due as a refund.  This case does not involve a dispute, bona fide or otherwise, about the amount of the refund that is due.  The plaintiffs allege that North Central failed to pay any refund in breach of the policy provision that promises to make a refund of the unearned part of a prepaid premium if the insurance is terminated before the final termination date.

### 2. Legal action.

The second policy provision North Central invokes states as follows:  "No action at law or in equity shall be brought to recover on this policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of this policy."  North Central interprets that provision to require its insureds to provide written notice of

any claim, including the breach of contract claim alleged here, before bringing suit.  The plaintiffs disagree.

Written notice is required before an action is brought "to recover on this policy."  The plaintiffs argue that their suit is not to recover on the policy, that is to obtain the insurance benefits provided under the policy, but instead is to recover the unearned part of their prepaid premiums.  The plaintiffs also point out that they have not suffered a "loss" that is covered by North Central's policies.

The policies support the plaintiff's interpretation of the "legal action" provision.  The policies define "proof of loss" as follows:  "Written proof of loss must be furnished to the Company at its office in case of claim for loss <u>for which this policy or any certificates issued hereunder provides any periodic payment</u> contingent upon continuing loss within 90 days after the termination of the period for which the Company is liable."  (Emphasis added.)  The "Payment of Claims" provision states:  "Subject to due written proof of loss, all accrued benefits for loss <u>for which this policy provides periodic payment</u> will be paid monthly to the Creditor to reduce or extinguish this indebtedness and any balance remaining unpaid upon the termination of liability will be paid immediately to the Creditor upon receipt of due written proof."  (Emphasis added.)  Based on those provisions, read together, the policy unambiguously precludes

legal action to recover a benefit provided under the terms of the policy until sixty days after written proof of a covered loss is provided to the company. That is not the claim that the plaintiffs allege here.

Because the applicable policies do not provide preconditions to the plaintiffs' breach of contract claim alleged here, the provisions cited by the defendants do not make the claim unripe or deprive the plaintiffs of standing to proceed. Similarly, those provisions do not bar the plaintiffs' breach of contract claim in the absence of written notice to North Central.

### B.  Implied Covenant of Good Faith and Fair Dealing

North Central contends that the court should read a notice requirement into its policies as part of the insureds' implied obligation of good faith and fair dealing. That request would stretch contract interpretation far beyond its permissible scope in this case. The implied covenant of good faith and fair dealing in the performance of a contract imposes limits on "a promise subject to such a degree of discretion that its practical benefit could seemingly be withheld." Centronics Corp. v. Genicom Corp., 132 N.H. 133, 144 (1989). That is not the situation presented here. Further, contrary to North Central's request, the court is not free rewrite the policies to add a notice requirement that North Central chose not to include. Catholic Med. Ctr., 151 N.H. at 702.

C.   Statutory Notice Requirements

As a last resort, North Central argues that the combined effect of three New Hampshire statutes relieves it of any obligation to pay a refund unless or until it received some notice that the plaintiffs had prepaid their loans.  The effect of the first two statutes, RSA 361-A:7 and 408-A:8, was thoroughly discussed in the court's decision in Carrier v. Am. Bankers Life Assurance Co., 2006 WL 1049721 (D.N.H. Apr. 21, 2006), and will not be repeated here.  North Central's efforts to change that outcome for purposes of this case are not persuasive.[2]

North Central also contends that a third statute, RSA 402:81, I, when added to the other two, relieves it of any refund obligation absent notice of prepayment.  RSA 402:81, I, however, pertains to refunds due upon cancellation of insurance policies by either the insurer or the insured.  In this case, the insurance policies terminated automatically upon prepayment of the loans.  Because the policies were not cancelled by either party, RSA 402:81 has no bearing on the claim alleged here.

---

[2]In particular, North Central appears to misunderstand RSA 361-A:7 and that part of the Carrier decision which interprets the statutory scheme.

8

II.  Motion to Exclude Certain Individuals from Purported Class

The plaintiffs filed a preliminary motion to certify a class shortly after they filed their initial complaint in this case. They asked, however, that the court "take the question of class certification under advisement pending preliminary discovery and briefing." The motion was intended only to prevent any issue of mootness should North Central offer judgment to individual plaintiffs before a class was certified. The defendants have filed no response to the motion. Therefore, a class has not been certified in this case, and no substantive motion to certify a class is pending.

Nevertheless, North Central moves to exclude from "the purposed nationwide class" any individuals who "signed arbitration agreements with third parties (such as lenders, finance companies, and motor vehicle dealerships) in connection with the motor vehicle loans at issue." Motion at 2. North Central asserts in its motion: "some of those [third-party] arbitration agreements encompass the claim asserted in the Complaint on behalf of those class members against North Central; as a non-signatory, North Central may rely on arbitration agreements signed by class members in order to compel arbitration of the covered claims." Id.

The plaintiffs oppose the motion. They point out that the class they proposed in the amended complaint already excludes any

9

individuals who signed North Central insurance policies with arbitration clauses.  The plaintiffs contend that North Central's effort to incorporate arbitration clauses from third-party agreements into its policies should be denied based on the integration clause in North Central's policies, because the policies did not include such restrictions as required under New Hampshire insurance law, because efforts to restrict the class at this precertification stage are premature, because North Central provided no evidence to support its theory, and because North Central cannot enforce a third-party arbitration clause.  In response, North Central filed a reply raising a complex choice of law question.

North Central's motion is premature.  At this stage, there is no substantive motion for class certification before the court.  As a non-signatory to the alleged third-party arbitration agreements, North Central would have to show that any such agreements require arbitration of the breach of contract claim the plaintiffs allege here.  North Central has not made that showing.  The choice of law question may or may not need to be addressed and, if so, will need further briefing.  Therefore, the motion is denied without prejudice to raise the same issues at an appropriate time.

Conclusion

For the foregoing reasons, the defendant's motion to dismiss (document no. 23) is denied. The defendant's motion to exclude (document no. 25) is denied without prejudice. The plaintiff's motions to file a surreply to the motion to exclude (document no. 40) and motion to strike the defendant's response (document no. 42) are terminated. The plaintiffs' preliminary motion to certify the class (document no. 3) is terminated pursuant to the provision in the parties' discovery plan for filing a class certification motion.

SO ORDERED.

*Joseph A. DiClerico, Jr.*
Joseph A. DiClerico, Jr.
United States District Judge

August 17, 2006

cc: Lee E. Bains, Jr., Esquire
James E. Butler, Jr., Esquire
Thomas J. Butler, Esquire
Christopher Cole, Esquire
Kate S. Cook, Esquire
Lorrie L. Hargrove, Esquire
Robert R. Lucic, Esquire
Michael D. Mulvaney, Esquire
Edward K. O'Brien, Esquire
Joel O. Wooten, Jr., Esquire